UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JAMES BOYKIN,

                                        Plaintiff,

        - against -

WESTCHESTER COUNTY JAIL,
WESTCHESTER COUNTY DEPARTMENT
OF CORRECTION, WCDOC JOSEPH K. SPANO,
COMMISSIONER - WESTCHESTER COUNTY,
WESTCHESTER COUNTY EXECUTIVE,
NURSE PRACTITIONER ZOETH, NURSE
"JANE" MONROE (the first name being fictitious
and unknown), NURSE MONIQUE "DOE," (the
last name being fictitious and unknown), NURSE
PRACTITIONER LISA PALMIERI, MEDICAL
SUPERVISOR RAUL ULLOA, OFFICER D.
MARTINEZ, SERGEANT PRICE, WELLPATH
INC. a/k/a WELLPATH CARE INC., CORRECT
CARE SOLUTIONS INC. a/k/a NEW YORK
CORRECT CARE SOLUTIONS MEDICAL
SERVICE, P.C. & NEW YORK CORRECT CARE
SOLUTIONS, LLC,

                                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-10513 (CS)

Appearances:

Hugh G. Jasne
Jasne & Florio, L.L.P.
White Plains, New York
*Counsel for Plaintiff*

John M. Murtagh
Denise M. Cossu
Murtagh, Cossue, Venditti & Castro-Blanco LLP
White Plains, New York
*Counsel for Medical Defendants*

Loren Zeitler
Westchester County Attorney's Office
White Plains, New York
*Counsel for County Defendants*

Seibel, J.

Before the Court are the motion to dismiss of Defendants Nurse Practitioner ("N.P.")

Zoeth, N.P. Lisa Palmieri, Medical Supervisor Dr. Raul Ulloa, Wellpath Inc., Correct Care

Solutions Inc., and New York Correct Care Solutions, LLC (collectively, the "Medical

Defendants"), (ECF No. 25), and the motion to dismiss of Defendants Westchester County Jail,

Westchester Department of Correction, Commissioner Joseph K. Spano, Westchester County

(the "County"), Westchester County Executive George Latimer, Corrections Officer ("C.O.") D.

Martinez, and Sergeant ("Sgt.") Price (collectively, the "County Defendants," and together with

the Medical Defendants, the "Defendants"), (ECF No. 33).  For the following reasons, both

motions are GRANTED.

## I.    **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's First Amended

Complaint.  (ECF No. 17 ("FAC").)

### A.    **Facts**

Plaintiff alleges that the County and its Department of Correction did not properly

maintain the recreation yard at the Westchester County Jail (the "Jail"), permitting mud to

accumulate without removing it or providing warnings or protections.  (FAC ¶ 40.)  Around 1

p.m. on May 4, 2021, Plaintiff, who at all relevant times was held in the Jail as a pretrial

detainee, slipped on mud that had accumulated in the yard, falling and injuring himself.  (*Id.* ¶¶

32, 62.)  After he fell, Plaintiff limped back to his housing unit F-2 and notified Defendant C.O.

Martinez.  (*Id.* ¶¶ 64-65.)  C.O. Martinez told Plaintiff that he would be seen by the 3 p.m. to 11

p.m. medical shift, and Plaintiff complained, (*id.* ¶ 66), although the FAC does not provide any details about that complaint.  In response, C.O. Martinez ordered Plaintiff to walk to "the old jail clinic," which was a little more than a quarter-mile from Plaintiff's housing unit.  (*Id.* ¶ 67.) Plaintiff complied with that order and hobbled down the stairs from his housing unit to F-1.  (*Id.* ¶ 68.)  After doing so, Plaintiff advised C.O. Martinez that he could not walk anymore, and Martinez called Defendant Sgt. Price, who Plaintiff alleges upon information and belief was the sergeant on duty.  (*Id.*)  While Plaintiff was on the floor – and the FAC does not explain how he ended up on the floor – Sgt. Price called for a medical team.  (*Id.* ¶ 69.)  Defendants N.P. Zoeth, Nurse Monroe, and Nurse Doe responded.  (*Id.*)  Plaintiff alleges that N.P. Zoeth did not examine him but repeatedly told him that "[t]here [was] nothing wrong with [him]" and that he "d[idn't] want to walk because [he was] lazy."  (*Id.* ¶ 70.)  But N.P. Zoeth then said, "[W]e're going to have to send you to the outside hospital for x-rays," and called someone who Plaintiff alleges on information and belief was Dr. Ulloa, who determined together with N.P. Zoeth that Plaintiff should wait until the next day to receive x-rays, which would be done in the Jail.  (*Id.* ¶¶ 71-72.)  Plaintiff was then taken to the Jail's clinic in a wheelchair.  (*Id.* ¶ 73.)

At the clinic, when asked about his pain by unnamed and unidentified medical staff, Plaintiff responded that his pain was "a 10 out of 10."  (*Id.* ¶ 74.)  The medical staff then wrapped Plaintiff's right ankle in an ace bandage, gave Plaintiff crutches and told him to use them, provided him with two Motrin tablets, and ordered him to return to his housing unit F-2. (*Id.* ¶ 75.)  The crutches provided to Plaintiff were uneven and too long, and the unnamed and unidentified medical staff did not properly adjust them or provide Plaintiff any instructions for use.  (*Id.* ¶ 76; *see id.* ¶¶ 75, 82, 97, 755.)  Plaintiff alleges that it would have been a violation of an unspecified Jail policy had he removed any hardware from the crutches to adjust them, so he

had to use them improperly by standing on his "tippy toes" and swinging the crutches outward. (*Id.* ¶¶ 75-76, 83.)  While the FAC alleges that it "clearly should have been readily determined by any medical professional" that the crutches were too tall, (*id.* ¶ 82), Plaintiff does not allege that he complained to any of the Defendants about any issues with the crutches or that any of the Defendants provided him the crutches.

When Plaintiff arrived back at the F-2 housing unit, he spoke with Sgt. Price who advised him that he should not be upstairs with crutches.  (*Id.* ¶ 77.)  Plaintiff requested to be moved downstairs, and Sgt. Price responded that that order would need to come from medical.  (*Id.*)  Plaintiff alleges upon information and belief that Sgt. Price did not follow-up or address any medical issues that Plaintiff faced.  (*Id.* ¶ 78.)  At 6 p.m. that day, Plaintiff needed to walk downstairs to receive his medication, but he advised an unnamed C.O. that he could not walk. (*Id.* ¶ 79.)  An unnamed nurse brought Plaintiff his Motrin but told him that he would need to "figure it out for himself" the next day.  (*Id.*)  Plaintiff could not sleep due to the severe pain from his injuries, (*id.* ¶ 80), but the FAC does not allege that Plaintiff notified anyone about this pain.

On or about May 5, 2021, Plaintiff used his crutches to walk down the stairs to get his x-ray.  (*See id.* ¶¶ 81, 83.)  Because his crutches were too tall for him, he had to "swing" the crutches to move with them, and when he tried to catch himself with his injured foot, his foot buckled, he heard a pop and a crack, and he fell down the stairs.  (*Id.* ¶¶ 82-83.)  A non-defendant C.O. was at the bottom of the stairs with Plaintiff for about fifteen to twenty minutes before he was helped up and brought to get his x-ray.  (*Id.* ¶ 84.)  A non-defendant sergeant advised Plaintiff that he would be moved downstairs to F-1, (*id.*), and ten minutes after returning from the Jail's x-ray, he was advised that he needed outside medical treatment, (*id.* ¶ 85).

Plaintiff was brought to the hospital, where the doctor unwrapped his bandaged leg and advised Plaintiff that an x-ray had confirmed that his tibia was broken in two places. (*Id.* ¶ 86.) The hospital provided Plaintiff pain medication and set his leg with a splint, and the doctor advised Plaintiff that his leg might heal without surgery if he could avoid putting weight on it and keep it elevated. (*Id.* ¶¶ 87-88.)

When Plaintiff returned to the Jail, he met with N.P. Palmieri, who told Plaintiff that a broken leg "[wa]sn't serious enough" for him to be housed in the Jail's infirmary and sent him back to F-1 housing, which required Plaintiff to repeatedly walk and place weight on his leg. (*Id.* ¶ 89.) N.P. Palmieri also berated Plaintiff, repeatedly telling him to "stop whining" and to "suck it up" because Plaintiff was in jail, and threatening him with solitary confinement if he kept complaining about not having proper care. (*Id.* ¶ 90.) Plaintiff also alleges that N.P. Palmieri "denied Plaintiff needed medical care some of which was performed on the specific orders of Defendant Medical Supervisor Ulloa," (*id.* ¶ 94), and that an unnamed individual denied him blankets, allegedly in retaliation for a grievance, (*id.* ¶ 99). While Plaintiff alleges that he was not provided an item to elevate his leg until three days before his next appointment with the doctor, (*id.* ¶ 91), the FAC does not allege that Plaintiff requested any items to use for elevation or to whom he made any such requests. At his next appointment, Plaintiff was informed that he had overused and abused his leg, and it would require surgery to repair. (*Id.* ¶ 91.) The surgery took place approximately 3.5 weeks after the date of his initial fall on the mud. (*See id.* ¶ 92.) Plaintiff alleges upon information and belief that the surgery required "the installation of [a] metal plate, 8 screws and a rope, [and] 13 stitches taken out on June 25th, 2021." (*Id.* ¶ 100.) He also alleges that he now has a long scar across his ankle and calf, as well as torn ligaments and tendons, resulting from the falls and subsequent surgery. (*See id.* ¶¶ 100-104.)

B. **Procedural History**

On August 1, 2022, Plaintiff commenced this lawsuit in New York State Supreme Court, Westchester County. (*See* ECF No. 1-2.) On December 13, 2022, with the consent of the Medical Defendants, the County Defendants timely removed the action to this Court, asserting that Plaintiff's alleged *Monell* claims fell within this Court's federal question jurisdiction under 28 U.S.C. § 1331. (*See* ECF No. 1 ¶¶ 1-11; ECF No. 1-4.) On March 8, 2023, the Defendants filed pre-motion letters in anticipation of their motions to dismiss. (ECF Nos. 7, 8.) At the pre-motion conference, the Court granted Plaintiff leave to amend his Complaint, (*see* Minute Entry dated May 9, 2023; ECF No. 32-10), and on July 7, 2023, Plaintiff filed the FAC, (ECF No. 17).

The FAC asserts thirteen claims, styled as follows: (1) "Federal Civil Rights Violations including 42 USC § 1983 against ALL Defendants"; (2) "ALL Defendants Under US [*sic*] 42 USC § 1983 Federal Monell Claims against Westchester County"; (3) "Federal Claim of Federal Civil Rights Violations against ALL Defendants under 42 USC § 1983 Deliberate Indifference To Serious Medical Needs"; (4) "Federal claim of Engaging in Municipal Policies Designed and Implemented To Deprive Inmates of Lawful Rights Under Color of Law against Wellpath/Correct Care, Westchester County & Ulloa"; (5) "Denial of Medical Care and Conspiracy in violation of 42 U.S.C. § 1983 & the 8th and 14th Amendments to the United States Constitution against All Defendants"; (6) "Respondeat Superior as against County Defendants & Wellpath/Correct Care Solutions against All Defendants"; (7) "State Claim of Negligence against Westchester County REGARDING THE YARD"; (8) "State Claims of Gross Negligence, Negligent Supervision, Care and Treatment against Westchester County, REGARDING MEDICAL NEEDS": (9) "State Claims of Gross Negligence, Negligence Supervision, Care and Treatment against Wellpath Inc. a/k/a Wellpath Care Inc. Correct Care

6

Solutions Inc. a/k/a New York Correct Care Solutions Medical Service, P.C. & New York

Correct Care Solutions, LLC. REGARDING MEDICAL NEEDS"; (10) "State Claims of Gross

Negligence as to the Care and Treatment of Plaintiff against Medical Supervisor Raul Ulloa

REGARDING MEDICAL NEEDS"; (11) "State Claim of Negligent Supervision, Hiring &

Retention against Westchester County, Medical Supervisor Raul Ulloa & Wellpath/Correct

Care"; (12) "Alternatively Negligence against Wellpath/Correct Care"; (13) "Gross Negligence,

Negligence & Civil Conspiracy against Defendants Zoeth, Monroe, Doe, Palmieri & Ulloa and

Martinez & Price"; and (14) "Failure to Train against Westchester County, Medical Supervisor

Raul Ulloa & Wellpath/Correct Care."  (*See* FAC ¶¶ 127-764.)  Plaintiff seeks $50,000,000.  (*Id.*

at 88.)

The instant motions followed.  (ECF Nos. 25, 33.)

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . .
it does not unlock the doors of discovery for a plaintiff armed with nothing more than
conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the
court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not
entitled to the assumption of truth," and then determines whether the remaining well-pleaded
factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.
Deciding whether a complaint states a plausible claim for relief is "a context-specific task that
requires the reviewing court to draw on its judicial experience and common sense." *Id.*
"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to
relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6):

a district court may consider the facts alleged in the complaint, documents
attached to the complaint as exhibits, and documents incorporated by reference in
the complaint. Where a document is not incorporated by reference, the court may
nevertheless consider it where the complaint relies heavily upon its terms and
effect, thereby rendering the document integral to the complaint. For a document
to be considered integral to the complaint, the plaintiff must rely on the terms and
effect of a document in drafting the complaint; mere notice or possession is not
enough. And even if a document is integral to the complaint, it must be clear on
the record that no dispute exists regarding the authenticity or accuracy of the
document, and it must be clear that there exist no material disputed issues of fact
regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see*
*Solano v. New York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170*
*Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y.
Mar. 25, 2021).

"Documents outside of the pleadings are not generally considered in the context of a motion to dismiss." *Noel v. Wal-Mart Stores, E. LP.*, 764 F. App'x 17, 19 (2d Cir. 2019) (summary order). But because a complaint includes "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint," *id.* at 19-20; *see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."), the Court may consider the documents that Plaintiff attached as exhibits to his FAC: a November 19, 2009, Civil Rights of Institutionalized Persons Act ("CRIPA") report of an investigation of the Jail, (ECF No. 17-1), and a June 27, 2019 article from lohud.com that reported details about *Melvin v. Cnty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, (S.D.N.Y. Mar. 29, 2016), (ECF No. 17-2), which Plaintiff refers to as the "McNulty case," (FAC ¶¶ 119-121). *See BYD Co. Ltd. v. VICE Media LLC*, No. 21-1097, 2022 WL 598973, at *3 n.4 (2d Cir. Mar. 1, 2022) (summary order) ("We may consider both the . . . Article and the . . . Report because both documents were attached as exhibits to the Complaint."); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 167 n.1 (E.D.N.Y. 2019) (on an FRCP 12(b)(6) motion, "[t]he Court also considers exhibits attached to the complaint").

But the Court will not consider Plaintiff's testimony from a hearing held pursuant to New York General Municipal Law § 50-h[2] that Plaintiff submitted in support of his opposition to

---

[2] New York General Municipal Law § 50-h provides that where a notice of claim is filed against a county, the county "shall have the right to demand an examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." N.Y. Gen. Mun. Law § 50-h(1); *see Gurrieri v. Cnty. of Nassau*, No. 16-CV-6983, 2018 WL 6590564, at *5 (E.D.N.Y. Dec. 14, 2018).

Defendants' motions.  (*See* ECF Nos. 29, 29-1, 37, 37-1.)  "The great weight of authority on this issue establishes that courts generally may not consider 50-h examination transcripts in deciding a motion to dismiss because they fall outside the four corners of the complaint."  *Rys v. Clinton Cent. Sch. Dist.*, No. 19-CV-1251, 2022 WL 1541301, at *4 (N.D.N.Y. May 16, 2022) (collecting cases).  The hearing transcript is not attached to the FAC, and Plaintiff does not rely on the § 50-h testimony or cite to the transcript anywhere in the FAC.[3]  Nor is the transcript integral to the complaint or properly subject to judicial notice for its truth.  Plaintiff does not even attempt to explain how the § 50-h testimony would properly be considered at this stage.  Thus, the Court will not consider Plaintiff's § 50-h testimony in deciding these motions.  *See Taranto v. Putnam Cnty.*, No. 21-CV-2455 2023 WL 6318280, at *2 (S.D.N.Y. Sept. 23, 2023); *Rys*, 2022 WL 1541301, at *4; *J.H. v. City of Mount Vernon*, No. 18-CV-4399, 2019 WL 1639944, at *3 (S.D.N.Y. April 15, 2019).

---

[3] Because the transcript is of Plaintiff's own testimony, he presumably had an independent recollection of the events about which he testified, and his counsel could have included in the FAC anything of importance.  *See Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006).  It is not the Court's job to review the entire transcript to determine if it contains anything helpful.  *Cf. Knight v. Nassau Cnty.*, No. 17-CV-958, 2019 WL 3817392, at *4 (E.D.N.Y. Aug. 14, 2019) ("[I]t is not the role of the Court to search the summary judgment record for evidence supporting a party's motion or opposition thereto.").

III.    **DISCUSSION**

A.    **Rule 8**

Defendants argue that several of Plaintiff's claims should be dismissed because they impermissibly rely on group pleading.  (*See* ECF No. 27 ("Medical Ds' Mem.") at 19; ECF No. 35 ("County Ds' Mem.") at 2, 8, 13-14.)  Federal Rule of Civil Procedure ("FRCP") Rule 8(a) provides that a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "'When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint.'"  *Lafurno v. Walters*, No. 18-CV-1935, 2018 WL 2766144, at *3 (E.D.N.Y. June 8, 2018) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (collecting cases).  "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes."  *Josie v. City of N.Y.*, No. 21-CV-2486, 2023 WL 3765063, at *4 (E.D.N.Y. June 1, 2023); *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017) (same).  "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."  *Canon U.S.A.*, 2017 WL 4357339, at *7; *see Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 236-37 (S.D.N.Y. 2014) (FRCP 8 requires providing each defendant "fair notice of the basis for Plaintiff's claims").

> As the Second Circuit has explained, although [FRCP] 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.  A complaint that lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct fails to satisfy this minimum standard.

*Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)).

But nothing in the Rule "prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each." *Canon U.S.A.*, 2017 WL 4357339, at *7. Whether a complaint should be dismissed based on impermissible group pleading hinges on "whether adequate notice is given" that "will enable the adverse party to answer and prepare for trial . . . and identify the nature of the case." *Id.*; *see Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728-29 (S.D.N.Y. 2021) ("[T]he principal function of pleadings under the Federal Rules is to give the adverse parties fair notice of the claims asserted so as to enable them to answer and prepare for trial."); *Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) ("Dismissal under Rule 8 is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

Several of Plaintiff's claims here are inexcusably asserted against all Defendants. (*See* FAC ¶¶ 128-386, 420-456.) "[T]his technique muddles the clarity of the allegations," *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015), particularly because Plaintiff has not pleaded factual allegations that would support certain claims against specific Defendants and because he "asserts his claims in conclusory fashion without tying them to the facts he has recited," *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 344 (S.D.N.Y. 2018). That said, deciphering some of the factual allegations preceding the claims enables one to discern – to a certain extent – which Defendant did (or did not do) what, thereby putting those Defendants on notice of Plaintiff's claims. Thus, while the FAC is far – and I mean truly far – from clear, and while

12

Plaintiff's carelessness puts a needless burden on the Defendants and the Court to deduce what Plaintiff intended to allege, the group pleading alone does not amount to an FRCP 8 violation sufficient to dismiss the FAC in its entirety.  *See Josie*, 2023 WL 3765063, at * 4 ("Plaintiff need not, at this stage, specify what each individual's actions were where the complaint gives the relevant defendants notice as to what the claim is and the grounds upon which it rests."); *Vantone Grp.*, 2015 WL 4040882, at *4 ("Although it is far from precise, the SAC does make factual allegations that distinguish between the conduct of [certain defendants], listing specific actions taken by each of them.").  To the extent that Plaintiff's allegations underlying a particular cause of action are insufficient to provide notice to a particular defendant, the Court will dismiss that claim accordingly.

To be sure, group pleading is far from the only problem with the FAC.  It is needlessly prolix and redundant, filled with repeated conclusory allegations and boilerplate language.  It is written as if its author believes that verbosity enhances plausibility, but it obfuscates rather than clarifies.  The straightforward set of facts here should not require 89 pages and 764 paragraphs. Plaintiff's counsel seems to have made little effort to provide a comprehensive narrative and assertion of claims.  Rarely has the Court seen a complaint drafted by counsel that is so full of buzzwords, repetitions and conclusions, but so relatively devoid of facts and comprehensible claims.  And Plaintiff's briefs fare no better.  They are filled with rambling and conclusory contentions but provide little legal authority or analysis.  (*See generally* ECF No. 30 ("P's Opp. to Medical Ds"); ECF No. 31 ("P's Opp. to County Ds").)  "Were Plaintiff *pro se* and entitled to 'special solicitude,' the hours spent unraveling his claims and arguments would have been appropriate."  *McClean v. Cnty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *7 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom*, *McClean v. City of Mount Vernon*, 776 F. App'x 725

(2d Cir. 2019) (summary order).  "But the Court should not have to make such efforts when the plaintiff is represented by counsel."  *Id.*  I have done my best to decipher Plaintiff's claims and to draw all reasonable inferences to which he is entitled at this stage.  But I am not "bound to accept as true a legal conclusion couched as a factual allegation," *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015), of which there are plenty.

    **B.**    <u>Failure to State a Federal Claim</u>

The Medical and County Defendants both move to dismiss each of the FAC's federal causes of action for failure to state a claim pursuant to FRCP 12(b)(6).  (*See* ECF Nos. 25, 33. *See generally* Medical Ds' Mem; ECF No. 28 ("Medical Ds' Reply"); County Ds' Mem.; ECF No. 36 ("County Ds' Reply").)[4]

---

[4] In his opposition memorandum, Plaintiff voluntarily withdrew any claims asserted against Defendants Spano, Latimer, the Westchester County Department of Correction, and the Westchester County Jail, (ECF No. 31 ("P's Opp. to County Ds") at 2, 26), and the *respondeat superior* claims asserted against the County Defendants, (*id.*).  Because the defects in those claims were discussed at the pre-motion conference, Plaintiff's counsel's inclusion of them in the FAC, only to withdraw them when Defendants moved to dismiss them, was at best discourteous, as it created needless work for Defendants' counsel.

Further, Plaintiff concedes that he does not raise a First Amendment retaliation claim. (*See* P's Opp. to Medical Ds at 20 ("[T]he claim of retaliation herein has nothing to do with the First Amendment right of Free Speech.").)  In any event, any such claim would not survive.  "To state a First Amendment retaliation claim, a plaintiff must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Pitt v. County of Rockland*, No. 22-CV-8356, 2024 WL 691145, at *8 (S.D.N.Y. Feb. 20, 2024). Plaintiff provides no facts plausibly connecting any protected activity to any adverse action, *see Seeley v. Chambers*, No. 20-CV-5913255, 2020 WL 5913255, at *3 (E.D.N.Y. Oct. 6, 2020), so any First Amendment retaliation claim that Plaintiff arguably raises must be dismissed, and Plaintiff does not suggest any statutory or other basis for a retaliation claim.

i. **Federal Civil Rights Violations under 42 U.S.C. § 1983**

Plaintiff's first cause of action is a standalone claim for "Federal Civil Rights Violations including 42 USC § 1983." (FAC ¶¶ 128-254.) "If a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (collecting cases). Where a plaintiff fails to make specific factual allegations concerning the illegal conduct and the resultant harm, the complaint fails to state a claim for deprivation of civil rights under § 1983. *See Fariello v. Rodriguez*, 148 F.R.D. 670, 676-77 (E.D.N.Y 1993); *Neustein v. Orbach*, 732 F. Supp. 333, 346 (E.D.N.Y. 1990). Additionally, it is well settled that "[t]o establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023). "To do so, 'a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)).

Here, Plaintiff asserts that all Defendants violated his civil rights under the Fourteenth Amendment. (*See generally* FAC ¶¶ 128-254.) Liberally construing the FAC as I must, and stripping it of its conclusory and redundant allegations, Plaintiff raises Fourteenth Amendment claims for deliberate indifference to serious medical needs against the individual Medical and County Defendants in connection with the medical care that they provided him in May 2021, (s*ee* FAC ¶¶ 62-101, 161-251), and *Monell* liability and conspiracy claims based on those alleged underlying violations, (*see id.* ¶¶ 255-340, 387-430.) It is entirely unclear how this first cause of action is distinct from Plaintiff's second, third, fourth, and fifth claims that raise the same violations. And, as I explained to Plaintiff's counsel at the pre-motion conference, (*see*

15

ECF No. 32-10 at 4:8-23, 6:6-20), there is no such thing as a standalone § 1983 claim untethered to a substantive right. *See, e.g., Roberts v. Fleury*, No. 22-CV-918, 2024 WL 1242231, at *5 (N.D.N.Y. Mar. 22, 2024). Accordingly, the first claim must be dismissed because Plaintiff has not adequately pleaded a cause of action separate and apart from his remaining claims. *See Folk v. City of N.Y.*, 243 F. Supp. 3d 363, 371 (E.D.N.Y. 2017) (dismissing similar standalone § 1983 claim).

### ii. Deliberate Indifference to Serious Medical Needs

Because Plaintiff was a pretrial detainee during the relevant period, (FAC ¶ 31), his claims of deliberate indifference to medical needs are evaluated under the Due Process Clause of the Fourteenth Amendment. *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)); *see Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 463 (S.D.N.Y. 2023).

"To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test: First, the alleged deprivation of adequate medical care must be sufficiently serious." *Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017). "Second, the defendant must act with a 'sufficiently culpable state of mind.'" *Id.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). For pre-trial detainees, both prongs are assessed objectively. *Dumel*, 656 F. Supp. 3d at 463-65; *Haynes v. City of N.Y.*, No. 19-CV-1925, 2020 WL 4926178, at *7 n.18 (S.D.N.Y. Aug. 20, 2020). This means that the deprivation of medical care must have been objectively serious, and that the officials "knew, or should have known" that their conduct "posed an excessive risk to health or safety." *Lloyd v. City of N.Y.*, 246 F. Supp. 3d 704, 719 (S.D.N.Y. 2017); *see Dumel*, 656 F. Supp. 3d at 463-65; *Walker v. City of N.Y.*, 367 F. Supp. 3d 39, 62 (S.D.N.Y. 2019).

The first prong "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Padilla v. Corr. Care Sols.*, No. 17-CV-1150, 2018 WL 550610, at \*3 (N.D.N.Y. Jan. 22, 2018). This requirement involves two inquiries: "the first inquiry is whether the detainee was actually deprived of adequate medical care, and the second asks whether the inadequacy in medical care is sufficiently serious." *Dumel*, 656 F. Supp. 3d at 464. Put another way, the detainee "must show that the condition posed an unreasonable risk of serious damage to his health." *Id.* While there is no precise metric to determine the seriousness of a detainee's medical condition, the Second Circuit has provided a non-exhaustive list of factors to evaluate: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003); *see Dumel*, 656 F. Supp. 3d at 464; *Gray v. Ramos*, No. 19-CV-3836, 2021 WL 795166, at \*5 (S.D.N.Y. Mar. 2, 2021); *Walker*, 367 F. Supp. 3d at 62. "In addition, the actual medical consequences that flow from the alleged denial of care will be highly relevant." *Gray*, 2021 WL 795166, at \*5.

In cases where a plaintiff alleges that defendants provided inadequate care, rather than withheld treatment altogether, "the inquiry focuses on the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the [detainee's] underlying medical condition, considered in the abstract." *Durr v. Slator*, 558 F. Supp. 3d 1, 22 (N.D.N.Y. 2021). Thus, "[w]hen the basis for a prisoner's claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, this Court examines whether the delay itself created a risk of harm." *Valdiviezo*, 752 F. App'x at 32.

"The second requirement is the 'mens rea prong,'" and it requires a plaintiff to "prove that the defendant-official acted intentionally in depriving adequate medical care or recklessly failed to act with reasonable care even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Lara-Grimaldi v. Cnty. of Putnam*, 529 F. Supp. 3d 88, 105 (S.D.N.Y. 2021); *see Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019); *Valdiviezo*, 752 F. App'x at 33. "This standard therefore does not encompass an inadvertent failure to provide adequate medical care." *Gray*, 2021 WL 795166, at *6; *Walker*, 367 F. Supp. 3d at 62 (same).

"[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see Charles*, 925 F.3d at 87 ("A plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context."); *Lara-Grimaldi*, 529 F. Supp. 3d at 106 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.").

Plaintiff raises myriad allegations against the individual Medical and County Defendants, asserting, among other things, that each was deliberately indifferent to Plaintiff's serious medical needs in violation of the Fourteenth Amendment. (*See* FAC ¶¶ 62-99, 160-61, 180-220, 341-386.) As a threshold matter, Plaintiff has failed to allege the personal involvement of any of the named Medical and County Defendants regarding the crutches, the provision of Motrin for his pain, the medical decision that Plaintiff should remain in the F-2 housing unit prior to his second fall, or the provision of items to use for elevating his injured leg. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."

*Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see Kravitz*, 87 F.4th at 129;

*Anderson v. City of Mount Vernon*, No. 23-CV-3963, 2024 WL 2158390, at *2 (S.D.N.Y. May

13, 2024).  "The Second Circuit has defined 'personal involvement' to mean direct participation,

such as 'personal participation by one who has knowledge of the facts that rendered the conduct

illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'"

*Alicea v. Smith*, No. 23-CV-528, 2024 WL 1704999, at *4 (D. Conn. Apr. 20, 2024) (quoting

*Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).

Plaintiff fails to allege facts indicating that any of the individual Medical or County

Defendants were involved in, or even aware of, any constitutional violations with respect to the

crutches, the Motrin, the decision to keep Plaintiff housed upstairs, or the denial of items to

elevate his leg.  To the extent that the FAC groups Defendants collectively regarding these

alleged violations, (*see generally* FAC ¶¶ 45-47, 100, 241, 302, 342-382), those allegations are

insufficient because they "lump[] all the defendants together in each claim and provide[] no

factual basis to distinguish their conduct," *Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL

1509355, at *3 (W.D.N.Y. Mar. 26, 2018); *see Anderson*, 2024 WL 2158390, at *2 (collecting

cases); *see also Gonzalez v. Yepes*, No. 19-CV-267, 2019 WL 2603533, at *7 (D. Conn. June 25,

2019) ("As a corollary of the personal involvement requirement, complaints that rely on 'group

pleading' and fail to differentiate as to which defendant was involved in the alleged unlawful

conduct are insufficient to state a claim.") (collecting cases); *Lara-Grimaldi*, 2018 WL 1626348,

at *11 (no personal involvement where complaint contained "no allegations whatsoever that

[defendant] was involved in, aware of, or somehow permitted" the alleged violation).  Thus,

Plaintiff's § 1983 claims with respect to those alleged constitutional violations are not actionable.

*See Anderson*, 2024 WL 2158390, at *2 ("Failing to allege that a defendant was personally

involved in, or responsible for, the conduct complained of renders a complaint fatally defective on its face."); *Yousef v. Cnty. of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at *9 (S.D.N.Y. Apr. 28, 2020) ("Plaintiff cannot hold the individual Defendants responsible for acts and omissions of non-Defendants."); *Moore v. Westchester Cnty.*, No. 18-CV-7782, 2019 WL 3889859, at *5 (S.D.N.Y. Aug. 19, 2019) ("[N]onspecific allegations that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.").

I now turn to the remaining allegations with respect to the named individual Medical and County Defendants.

### 1.    N.P. Zoeth, Nurse Monroe, and Nurse Doe

With respect to N.P. Zoeth, Nurse Monroe and Nurse Doe, Plaintiff fails to satisfy the first requirement:  the actual deprivation of medical care.  The FAC alleges that Zoeth, Monroe and Doe provided Plaintiff with medical care, examining him and concluding that he needed to receive an x-ray, and providing him a wheelchair and transporting him to the Jail's medical clinic.  (FAC ¶¶ 69-73.)  The FAC's allegations regarding Zoeth's (and possibly Dr. Ulloa's) decision to take the x-rays the next day at the Jail, rather than that day at an outside hospital, (*see id.* ¶¶ 71-72), amount to disagreement over Plaintiff's proper course of treatment, which does not give rise to a constitutional violation.  *See Chance*, 143 F.3d at 703; *Boykins v. Lopez*, No. 21-CV-2831, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022).  It is well settled that

> disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Rutherford v. Correct Care Sols., LLC*, No. 18-CV-12049, 2020 WL 550701, at *6 (S.D.N.Y. Feb. 4, 2020).  Accordingly, complaints alleging disagreement with the course of treatment, like this one involving the scheduling oof Plaintiff's x-ray, are routinely dismissed in this Circuit, at least where some medical assessment is done.  *See, e.g.*, *Jacks v. Annucci*, No. 18-CV-3291, 2019 WL 3239256, at *4 (S.D.N.Y. July 18, 2019) (collecting cases); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.").  At most, Plaintiff can complain of a one-day delay in receiving his x-ray, which does not amount to a constitutional violation.  *See Patterson v. Westchester Cnty.*, No. 13-CV-194, 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014) (several-day delay in taking x-ray was not a sufficiently serious risk of harm) (collecting cases), *report and recommendation adopted*, 2014 WL 2759072 (S.D.N.Y. June 16, 2014).  Nor has Plaintiff alleged any facts that the delay in providing the x-ray worsened his condition.  *See Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012) (affirming dismissal under first prong in absence of evidence that plaintiff's conditions worsened over the delay at issue); *Smith v. City of N.Y.*, No. 15-CV-7910, 2016 WL 7471334, at *4 (S.D.N.Y. Dec. 28, 2016) ("[W]here a delay in providing medical attention is neither the underlying cause of a plaintiff's condition nor contributed to a worsening in the condition, courts have found that the objective prong of a deliberate indifference claim is not met.") (collecting cases).

Even if Plaintiff met the first requirement with respect to these three Defendants, he fails to meet the second one.  Plaintiff's own account shows that Zoeth, Monroe and Doe provided

Plaintiff with nearly immediate care after he informed Sgt. Price that he could not walk.  (FAC ¶¶ 68-76.)  Sgt. Price called a medical team that included Zoeth, and she determined that Plaintiff needed an x-ray, called someone (perhaps Dr. Ulloa) to discuss this treatment, and based on that conversation reached the determination that Plaintiff should receive an x-ray the next day in the Jail; Plaintiff was put into a wheelchair and pushed to the clinic; and the clinic staff wrapped Plaintiff's ankle in an ace bandage, provided him with crutches, and gave him Motrin for pain. (FAC ¶¶ 69-75.)  In the absence of any allegation that Plaintiff's condition deteriorated because of the delay in the x-ray, let alone that Zoeth knew or should have known it would, Plaintiff's allegation that Zoeth "should have ordered an immediate x-ray . . . does not rise to the level of deliberate indifference."  *Vines v. McCrystal*, No. 18-CV-1432, 2018 WL 6050896, at *4 (D. Conn. Nov. 19, 2018) (collecting cases).

To the extent that Plaintiff challenges Zoeth's comments that "there [was] nothing wrong with [him]" and that Plaintiff did not want to walk "because [he was] lazy," (FAC ¶ 70), those statements, assuming they were made, were unprofessional and unkind, but they amount at most to verbal harassment, which alone – without an allegation of an appreciable injury connected to those comments – is not enough to constitute a violation of a federally protected right, *see Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order); *Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 6216724, at *19 (S.D.N.Y. Sept. 25, 2023); *Matteson v. Lauren*, No. 16-CV-1548, 2017 WL 11716587, at *6 (N.D.N.Y. Jan. 19, 2017).  Plaintiff does not allege that he suffered any physical injury because of Zoeth's comments, nor could he, because his own account belies such an allegation.  (FAC ¶¶ 70-80.)

As for Monroe and Doe, Plaintiff alleges that they "said nothing" while Zoeth made her comments.  (FAC ¶ 70.)  And Plaintiff alleges that Monroe "took no steps to assist Plaintiff nor

prevent the denial of necessary care." (*Id.* ¶ 95.) Neither of these allegations are sufficient to plausibly support a deliberate indifference claim, and the FAC sets forth no facts suggesting that Monroe or Doe was personally involved in Plaintiff's medical treatment beyond initially accompanying Zoeth. *See Barnes v. Uzu*, No. 20-CV-5885, 2022 WL 784036, at *16 (S.D.N.Y. Mar. 16, 2022) (dismissing claims against nurse where plaintiff did not allege personal involvement beyond initial treatment). To the extent Plaintiff meant to suggest that Monroe or Doe had an obligation to intervene to prevent a constitutional violation by Zoeth, that claim would fail because "[i]t is well settled that an underlying constitutional violation is a precondition of a failure-to-intervene claim." *Livingston v. Hoffnagle*, No. 19-CV-353, 2021 WL 3888283, at *6 (N.D.N.Y. Aug. 3, 2021), *report and recommendation adopted*, 2021 WL 3885247 (N.D.N.Y. Aug. 31, 2021).

Therefore, the conclusory allegations against N.P. Zoeth, Nurse Monroe and Nurse Doe are insufficient to plausibly allege deliberate indifference to medical needs, and those claims must be dismissed as to them. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[A]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."); *Harris v. Doe,* No. 24-CV-151, 2024 WL 1344697, at *3 (D. Conn. Mar. 29, 2024) ("The mere mention of a constitutional provision is not sufficient to state a claim for relief under that provision.").

### 2.    N.P. Palmieri

With respect to the allegations against N.P. Palmieri, the Court is dubious that Plaintiff's condition, after his treatment at the hospital, was sufficiently serious. While a broken leg in the abstract would meet that standard, *see Shivers v. McGee*, No. 22-CV-720, 2024 WL 3938806, at *5 (W.D.N.Y. Aug. 1, 2024) (broken ankle constituted a serious medical need), *report and*

*recommendation adopted*, 2024 WL 3938547 (W.D.N.Y. Aug. 26, 2024); *Carmona v. Sliya*, No. 24-CV-814, 2024 WL 3964930, at *4 (D. Conn. Aug. 28, 2024) (broken arm considered "sufficiently serious"); *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *20 (E.D.N.Y. Aug. 22, 2017) (collecting cases where courts have concluded that broken limbs are "sufficiently serious" medical conditions), Plaintiff had been evaluated and treated for that injury at the hospital, *see Jimenez v. Sommer*, No. 14-CV-5166, 2017 WL 3268859, at *6 (S.D.N.Y. July 28, 2017) ("[E]ven assuming, without deciding, that a fractured distal fibula constitutes a serious medical need, the Court notes that in similar cases involving fractured fibulas, courts in this Circuit have denied deliberate indifference claims . . . on the basis that the care provided was adequate where Defendants took steps to immobilize the ankle area, gave plaintiff crutches and pain relievers, and provided for further evaluation and treatment."). A Jail nurse is not required to second-guess the opinion of hospital professionals that an inmate is fit to be discharged. *See Fletcher v. City of New London*, No. 16-CV-241, 2018 WL 4604306, at *6 (D. Conn. Sept. 25, 2018).

But assuming for purposes of the motion that Plaintiff's condition was sufficiently serious at that point, Plaintiff's allegations do not suffice to meet the second requirement. Palmieri's conclusion that Plaintiff's broken leg was not serious enough to warrant housing in the Jail's infirmary amounts to mere disagreement over the proper medical treatment or a preference for different treatment, which does not establish deliberate indifference. *See Gray*, 2021 WL 795166, at *8 ("[T]hese claims exhibit nothing more than a disagreement with Defendants' medical judgment, which is insufficient to sustain a claim for deliberate indifference."); *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) (plaintiff's "dissatisfaction with his treatment is insufficient to support the

subjective or *mens rea* prong of deliberate indifference"); *cf. Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at \*4 (S.D.N.Y. Sept. 30, 2017) (plaintiff who alleged he complained of chest pains and was sent back to his cell without examination or treatment before having a heart attack had pleaded deliberate indifference).

Nor does Plaintiff allege that Palmieri knew, or should have known, that the hospital doctor advised Plaintiff to avoid putting weight on the leg and to keep it elevated. *Cf. Durr*, 558 F. Supp. 3d at 23-24 (allegations that defendants possessed plaintiff's discharge instructions and received doctor's discharge orders were sufficient to satisfy the second requirement for deliberate indifference claim); *Carmona*, 2024 WL 3964930, at \*4 (prison official's disregard for doctor's discharge order constituted deliberate indifference); *see also Smith*, 2017 WL 4417699, at \*5 (risks to plaintiff's health were so obvious that lack of treatment established objective recklessness). But even if she did, Plaintiff provides no facts suggesting that confinement to the infirmary was necessary for him to follow the discharge instructions, let alone that Palmieri knew or should have known that. Even if Plaintiff would have been better off in the infirmary, he presents no facts from which I could infer that Palmieri's belief that Plaintiff was fit for general population arose from indifference, as opposed to misjudgment, and the latter would be negligence, which is not actionable under § 1983. *See Vernsey v. Touron*, No. 920-CV-992, 2023 WL 2346366, at \*3 (N.D.N.Y. Feb. 8, 2023), *report and recommendation adopted sub nom.*, *Vernsey v. Tourn*, 2023 WL 2346281 (N.D.N.Y. Mar. 3, 2023); *Feliciano*, 2017 WL 1189747, at \*13 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Plaintiff's preference to stay in the infirmary does not rise to the level of a constitutional violation. *See Christy v. Warden of Rikers Island*, No. 19-CV-9666, 2022 WL 3716268, at \*3 (S.D.N.Y. Aug. 29, 2022) (disagreement with decision to return inmate

to general population following surgery is preference for different treatment that does not rise to level of deliberate indifference).  Further, to the extent that Plaintiff alleges Palmieri verbally harassed him when he protested her decision, (FAC ¶¶ 90, 99), those comments alone are not enough to constitute a violation of a federally protected right, *see Cole*, 379 F. App'x at 43; *Akinlawon*, 2023 WL 6216724, at *19; *Matteson*, 2017 WL 11716587, at *6, and Plaintiff does not allege that he suffered any associated injury because of Palmieri's comments.

Thus, the deliberate indifference claim against N.P. Palmieri must be dismissed.

### 3.     Medical Supervisor Dr. Ulloa

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  While *Colon* laid out a special test for supervisory liability, outlining five ways a plaintiff could show personal involvement of a supervisor, the Second Circuit has clarified that under the Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).  "Simply put, there's no special rule of liability for supervisors." *Id*.  While "'[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at 676) (second alteration in original), "[t]he violation must be established against the supervisory official *directly*," *id.* (emphasis added).[5]

---

[5] Given that the Second Circuit has overruled the *Colon* standard for supervisory liability and replaced it with a more defendant-friendly standard as set forth in *Tangreti*, *see* 983 F.3d at 616-18, it surprises me that Ulloa's counsel did not cite *Tangreti* and cited only *Grullon*, (*see* Medical Ds' Mem. at 18; Medical Ds' Reply at 6), which assessed the facts under the old *Colon* standard, *see* 720 F.3d at 139, which is less favorable to him.

Here, no claim for supervisory liability under § 1983 lies because there has been no underlying constitutional deprivation. *See Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999); *see Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) (holding that there is no supervisory liability because there was no underlying constitutional violation). But even if there had been an underlying violation, this claim would not survive. Plaintiff has not pleaded sufficient facts for me to conclude that Dr. Ulloa, who is a medical supervisor of the other Medical Defendants, (FAC ¶¶ 19, 25, 71), was personally involved in any constitutional violations. While the FAC alleges that Ulloa spoke with Zoeth to discuss scheduling Plaintiff's x-ray for the day after Plaintiff's initial fall, (FAC ¶¶ 71-72), that allegation is based on information and belief, and no basis for that information and belief is provided. *See Whiteside v. Hover-Davis, Inc.*, No. 19-CV-6026, 2020 WL 979785, at *4 (W.D.N.Y. Feb. 28, 2020) ("A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements 'upon information and belief' without explaining the basis for the belief."), *aff'd*, 995 F.3d 315 (2d Cir. 2021). The FAC is devoid of any other facts suggesting that Ulloa was otherwise involved in Plaintiff's medical care. The allegations that Ulloa ordered Palmieri to deny "needed medical care," (FAC ¶ 94), or ignored Plaintiff's needs for medical attention, (*see* FAC ¶¶ 180-181, 185-86), are wholly conclusory. *See Morales v. Ct. Dep't of Corr.*, No. 22-CV-1179, 2022 WL 16635388, at *4 (D. Conn. Nov. 2, 2022) (plaintiff "must allege specific facts describing how each defendant from whom he seeks damages acted with indifference to his need for medical attention"). At most, these allegations indicate that Ulloa is being sued merely in his capacity as a supervisor, which does not suffice under *Tangreti*. *See* 983 F.3d at 619.

Because any delay in the x-ray does not give rise to a constitutional violation, as discussed above, and Plaintiff does not allege any facts specifying what other medical care Ulloa purportedly denied, the deliberate indifference claim against Dr. Ulloa must be dismissed.[6]

### 4.     C.O. Martinez and Sgt. Price

The same standards above apply to claims of deliberate indifference to serious medical needs whether asserted against medical or nonmedical prison personnel.  *See Dumel*, 656 F. Supp. 3d at 465; *Easley v. Loverme*, No. 18-CV-6326, 2020 WL 2557809, at *6 (W.D.N.Y. May 20, 2022); *Feliciano*, 2017 WL 1189747, at *13.  Plaintiff does not allege any facts satisfying the first requirement as to C.O. Martinez or Sgt. Price.  Rather than alleging how these two officers deprived Plaintiff of any medical treatment or worsened his condition, the FAC's allegations contradict Plaintiff's claims because both officers assisted Plaintiff.  First, C.O. Martinez listened to Plaintiff's complaint and advised him that he would be seen shortly by the afternoon shift medical staff.  (FAC ¶¶ 64-66.)  Second, when Plaintiff subsequently informed C.O. Martinez that he could not walk to the clinic, C.O. Martinez called Sgt. Price, who proceeded to call the medical team to examine Plaintiff.  (*See* FAC ¶¶ 67-69.)  Finally, Sgt. Price subsequently advised Plaintiff that he should not be upstairs while using crutches and informed him that an order to that effect would need to come from medical.  (*Id.* ¶ 77.)  Contrary to Plaintiff's claims, the FAC shows that both officers provided Plaintiff with assistance, or at the very least, did not deprive him of any medical treatment or take any step that worsened the condition of his leg.

Even if Plaintiff had satisfied the first requirement, he fails to plausibly allege facts to meet the second.  The FAC pleads no facts that C.O. Martinez or Sgt. Price, two corrections

---

[6] Plaintiff's supervisory liability claim as to Ulloa is also duplicative of his direct claims for deliberate indifference to medical needs against him, and it would alternatively be dismissed on that basis as well.  *See Anderson*, 2024 WL 2158390, at *10 (collecting cases).

employees who are not alleged to have had medical training, knew or should have known of an excessive risk to Plaintiff's safety from not receiving further medical care or should have overruled medical personnel regarding his housing assignment. *See Lopez v. City of N.Y.*, No. 19-CV-3887, 2021 WL 466974, at *6 (S.D.N.Y. Feb. 9, 2021) ("Because under the circumstances it was reasonable for [the non-medical defendants] to defer to the expertise and judgment of trained medical personnel, the Court cannot infer that they demonstrated deliberate indifference."); *Borges v. Schenectady Cnty.*, No. 20-CV-245, 2020 WL 5369808, at *7 (N.D.N.Y. Sept. 8, 2020) (allegations did not "plausibly suggest that [defendant], as a non-medical professional, had any way of knowing that the medical treatment Plaintiff received . . . would not improve Plaintiff's condition such that his alleged decision to follow, rather than oppose, Doctor John Doe's directive to return Plaintiff to his cell amounted to objective deliberate indifference"); *Feliciano*, 2017 WL 1189747, at *14 (collecting cases); *cf. Dumel v. Westchester Cnty.*, No. 19-CV-2161, 2021 WL 738365, at *13-15 (S.D.N.Y. Feb. 25, 2021) (plausible claim for deliberate indifference to medical needs against correction officer where the officer acknowledged plaintiff's serious condition and promised to seek urgent medical attention but failed to do so). To the extent that Plaintiff alleges "[u]pon information and belief, Sergeant Price made no effort as to follow up or to properly address the medical issues facing Plaintiff," (FAC ¶ 78), that allegation is conclusory, and the FAC pleads no facts suggesting why it would have been Sgt. Price's responsibility to pursue a decision that had to be made by medical professionals.[7] Rather, "[c]orrection officers who defer to the judgment of medical professionals . . . are only liable if the plaintiff pleads facts demonstrating that the nonmedical defendant

---

[7] Further, even if Price had some responsibility to obtain a medical order for Plaintiff, which the FAC does not allege, there are no facts suggesting that her failure to do so was anything more than mere negligence.

should have challenged the medical professionals' decisions." *Feliciano*, 2017 WL 1189747, at

*14.  Plaintiff has not done so here.  Thus, the deliberate indifference claims against C.O.

Martinez and Sgt. Price must be dismissed.

### C.    § 1983 Conspiracy

Plaintiff alleges that all Defendants conspired to violate his Fourteenth Amendment rights

by depriving him of necessary medical care.  (*See* FAC ¶¶ 420-430.)  The Medical and County

Defendants argue that there is no underlying constitutional violation to support the § 1983

conspiracy claims, and in any event, Plaintiff has pleaded no facts that support any meeting of

the minds or agreement to deprive Plaintiff of his constitutional rights existed among or between

Defendants.  (*See* Medical Ds' Mem. at 17-18; Medical Ds' Reply at 5-6; County Ds' Mem. at

18-19; County Ds' Reply at 8-9.)  With respect to the Medical Defendants, Plaintiff responds

that the Medical Defendants "ignore the plethora of acts and inferences which can be drawn

therefrom paired with the fact the Defendants were on actual and constructive notice of prior

similar conduct" from the CRIPA report and previous lawsuits brought against "many of the

same Defendants."  (P's Opp. to Medical Ds at 20.)  As to the County Defendants, Plaintiff

contends that they "read the FAC too narrowly," citing 92 paragraphs of the FAC without any

explanation or analysis, and asserting that Plaintiff must be given "all favorable inferences"

because this is a motion to dismiss under FRCP 12(b)(6).  (P's Opp. to County Ds at 25.)  These

barebones arguments are so conclusory as to amount to abandonment of the claim.  *See Lewis v.

Samsung Elecs. Am., Inc.*, No. 22-CV-10882, 2023 WL 7623670, at *8 (S.D.N.Y. Nov. 14,

2023).

But even if they were not, the conspiracy claim would fail, for two reasons.  First,

Plaintiff has not "alleged, except in the most conclusory fashion, that any such meeting of the

minds occurred among any or all of the defendants." *Webb v. Goord*, 340 F.3d 105, 111 (2d Cir.

2003). Second, and more fundamentally, "absent an underlying constitutional violation on

which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law."

*AK Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *3

(S.D.N.Y. Jan. 19, 2011), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *see Bird v.*

*Cnty. of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *9 (S.D.N.Y June 23, 2022)

("[A] civil conspiracy claim does not set forth an independent cause of action but rather is

sustainable only after an underlying claim has been established."). Because the Court has

already dismissed Plaintiff's underlying § 1983 claims for deliberate indifference to serious

medical needs, Plaintiff's § 1983 conspiracy claims fail as well and must be dismissed.

### D.    *Monell* Liability

The respective Medical and County Defendants also move to dismiss Plaintiff's

municipal liability claims against them, arguing, among other things, that there are no underlying

constitutional violations so the *Monell* claims cannot stand. (*See* Medical Ds' Mem. at 22-26;

Medical Ds' Reply at 8-10; County Ds' Mem. at 14-18; County Ds' Reply at 7-8.) They are

correct. *See Haslinger v. Westchester Cnty.*, No. 22-131, 2023 WL 219198, at *1 (2d Cir. Jan.

18, 2023) (summary order) ("[T]here can be no municipal liability where there is no underlying

constitutional violation."); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (to the same

effect); *Haynes*, 2020 WL 4926178, at *16 ("In any event, having found no underlying

constitutional violation, without which there can be no municipal liability under Section 1983,

the Court need not even address plaintiff's various arguments related to the [defendants']

liability under *Monell*."); *Rutherford*, 2020 WL 550701, at *10 (dismissing *Monell* claims where

plaintiff did not adequately plead "an underlying deliberate indifference to serious medical needs

claim" or other constitutional violation).  Therefore, Plaintiff's § 1983 *Monell* claims against the respective Medical and County Defendants must be dismissed.[8]

### E.    State Law Claims

"[T]he traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state-law claims where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that the only claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, which are dismissed without prejudice.

## IV.    LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

[8] I thus need not address the parties' remaining arguments regarding *Monell* liability, but I note that neither Plaintiff's own case, *see Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *23 (S.D.N.Y. Mar. 19, 2024), nor mere reference to unspecified lawsuits bringing unknown claims with unknown outcomes, *see Dumel v. Westchester Cnty.*, No. 19-CV-2161, 2021 WL 738365, at *5 (S.D.N.Y. Feb. 25, 2021); *Rutherford*, 2020 WL 550701, at *11, nor a 15-year old report detailing deficiencies unrelated to Plaintiff's allegations, *see Patterson*, 2014 WL 1407709, at *11 n.17; *Thomas v. Westchester Cnty.*, No. 12-CV-6718, 2013 WL 3357171, at *6 (S.D.N.Y. July 3, 2013), would suffice to establish municipal liability.

Here, Plaintiff has already amended once, (ECF No. 17), including after having the benefit of Defendants' pre-motion letters outlining the grounds for their motions to dismiss, (ECF Nos. 7, 8), and the discussion at the pre-motion conference regarding the complaint's deficiencies, (*see* ECF No. 32-10).  Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *In re Eaton Vance Mut. Funds Fee Litig*., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").[9]

---

[9] That counsel apparently disregarded the guidance provided by the pre-motion letter and conference process, and filed an FAC that contains most of the same problems as the original Complaint, not only disserves the client but also results in a waste of the resources of Defendants and the Court.

Further, Plaintiff has not explained what facts he possesses that could cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court"); *Schwasnick v. Fields*, No. 08-CV-4759, 2010 WL 2679935, at *11 (E.D.N.Y. June 30, 2010) (leave to amend properly denied where plaintiff does not submit proposed amended complaint).

Accordingly, the Court declines to grant leave to amend.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. Plaintiff's federal claims are dismissed with prejudice; Plaintiff's withdrawn state law claims asserted against Defendants Spano, Latimer, the Westchester County Department of Correction, and the Westchester County Jail are dismissed with prejudice; and Plaintiff's remaining state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 25, 33), and close the case.

**SO ORDERED.**

Dated:  September 20, 2024
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

34